**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD BOYD COOPER,<br><br>               Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL,[1] Acting<br>Commissioner of Social<br>Security,<br><br>              Defendant. | Case No. CV 16-08925-AS<br><br>**MEMORANDUM OPINION** |

## I.  PROCEEDINGS

On December 1, 2016, Plaintiff filed a Complaint seeking review of the denial of his application for Disability Insurance Benefits. (Docket Entry No. 1).  The parties have consented to proceed before the undersigned United States Magistrate Judge.  (Docket Entry Nos. 11-12).  On April 27, 2017, Defendant filed an Answer along with the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Caroyln W. Colvin in this case.  See 42 U.S.C. § 205(g).

1

Administrative Record ("AR"). (Docket Entry Nos. 15-16). On November 27, 2017, the parties filed a Joint Stipulation ("Joint Stip."), setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 25).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION AND PRIOR PROCEEDINGS

On May 17, 2011, Plaintiff, formerly employed as a therapeutic counselor (<u>see</u> AR 38-40, 182-84), filed an application for Disability Insurance Benefits, alleging a disability onset date of April 27, 2011. (AR 156-57). The Commissioner denied Plaintiff's application initially on October 7, 2011, and on reconsideration on February 12, 2012.

On April 3, 2013, Administrative Law Judge Eileen Burlison ("ALJ Burlison"), heard testimony from Plaintiff, who was represented by counsel, and vocational expert ("VE") Valerie Williams. (<u>See</u> AR 35-55). On May 2, 2013, ALJ Burlison issued a decision denying Plaintiff's application. (<u>See</u> AR 14-21). The Appeals Council denied Plaintiff's request to review ALJ Burlison's decision on October 21, 2014. (<u>See</u> AR 1-4, 8). On December 16, 2014, Plaintiff filed a Complaint in this Court seeking review of ALJ Burlison's decision. (<u>Richard Boyd Cooper v. Carolyn W. Colvin</u>, Case No. CV 14-9611-AS;

Docket Entry No. 1).  On December 7, 2015, this Court vacated ALJ Burlison's decision and remanded the matter based on ALJ Burlison's failure to set forth the reasons for finding that Plaintiff's testimony was not credible.  (Id.; Docket Entry Nos. 16-17; AR 566-77).  On January 17, 2016, the Appeals Council vacated ALJ Burlison's Decision and remanded the matter.  (AR 581).

On remand, on July 12, 2016, a different ALJ, Roger E. Winkelman ("ALJ"), heard testimony from Plaintiff, who was represented by counsel, and VE Alan E. Cummings.  (See AR 475-509).  On August 4, 2016, the ALJ issued a decision denying Plaintiff's application.  (See AR 446-55).  Applying the five-step sequential process, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since March 31, 2011, the alleged onset date.  (AR 448).  At step two, the ALJ determined that Plaintiff had "the following severe impairments: degenerative disc disease of the cervical and lumbar spine, a small tear of the medial meniscus and lateral meniscus of the right knee, and hepatitis C."  (AR 448).  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations.  (AR 449).  The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC")[2] to perform light work,[3] except that he was "limited

_____

[2]  A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

[3]  "Light work involves lifting no more than 20 pounds at a time

3

to occasional performance of postural activities and should avoid walking on uneven terrain." (AR 449-54). At step four, relying on the VE's hearing testimony, the ALJ determined that Plaintiff could perform his past relevant work as a counselor-therapist as it was actually and generally performed. (AR 454). Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act, from March 31, 2011, through June 30, 2015, the date last insured. (AR 454-55).

The ALJ's decision subsequently became the final decision of the Commissioner, allowing this Court to review it. <u>See</u> 42 U.S.C. § 405(g).[4]

## III. STANDARD OF REVIEW

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. <u>See</u> <u>Brewes v. Comm'r</u>, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a

with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves stitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] The Court has not been able to locate in the record Plaintiff's request for the Appeals Council to review the ALJ's Decision or the Appeals Council's denial of that request.

4

preponderance. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).

## IV. PLAINTIFF'S CONTENTIONS

Plaintiff alleges that the ALJ failed to (1) provide specific and legitimate reasons for rejecting the opinions of Plaintiff's treating physicians; (2) find that Plaintiff did not meet Listed Impairment 1.04A; and (3) properly consider Plaintiff's testimony. (<u>See</u> Joint Stip. at 6-13, 23-26, 29-35).

## V. DISCUSSION

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[5]

---

[5] The harmless error rule applies to the review of administrative decisions regarding disability. <u>See</u> <u>McLeod v. Astrue</u>, 640 F.3d 881, 886-88 (9th Cir. 2011); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

5

**A.    The ALJ Properly Rejected the Opinions of Plaintiff's Treating Physicians, Lawrence Glass, D.O., and L.I. Goldstein, M.D.**

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(b)-(d). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001); <u>see also</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).

If a treating doctor's opinion is not contradicted by another doctor, the ALJ can reject the treating doctor's opinion only for "clear and convincing reasons." <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1164 (9th Cir. 2008); <u>Lester</u>, 81 F.3d at 830. If the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating doctor's opinion. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007l); <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998); <u>Lester</u>, 81 F.3d at 830. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

6

stating his interpretation thereof, and making findings." <u>Trevizo v.</u> <u>Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017) (quoting <u>Magallanes v.</u> <u>Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).

Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Plaintiff's treating physicians, Dr. Glass and Dr. Goldstein. (<u>See</u> Joint Stip. at 6-13). Dr. Glass, an osteopathic physician, and Dr. Goldstein, a hepatologist, treated Plaintiff for multiple years and provided similar opinions of Plaintiff's limitations.

Dr. Glass, who had been treating Plaintiff monthly since December 2007, completed a musculoskeletal questionnaire and a medical source statement, both dated June 16, 2011. (AR 231-33, 234-35). He diagnosed Plaintiff with rheumatoid arthritis and hepatitis C and stated that Plaintiff's prognosis was "poor." (AR 231, 233, 235). He indicated that Plaintiff requires a cane for standing or walking, apparently due to a "torn ACL [and] meniscus." (AR 232). He opined that Plaintiff (1) can stand or walk for only "[l]ess than 2 hours in an 8 hour workday," due to advancing rheumatoid arthritis and hepatitis C, (AR 234); (2) can sit for only one hour due to "his back [and] neck pain," (<u>id.</u>); (3) must change position every ten to twenty minutes due to his arthritis, (AR 235); (4) can lift only "[l]ess than 10 pounds," for no more than five minutes per two hour period, due to rheumatoid arthritis and hepatitis C, (AR 234); (5) can never engage in activities involving climbing, balancing, stooping, kneeling, crouching or crawling, (AR 235); (6) is limited

7

in his reaching, handling and fingering, (id.); and (7) has "severely limited" range of motion in his knees, hips, wrists and shoulders," (id.). Dr. Glass concluded that Plaintiff "cannot work." (Id.).

Dr. Goldstein, who had treated Plaintiff about every three to six months between 1991 and 2011, completed a medical source statement on August 2, 2012. (AR 104-08). He diagnosed Plaintiff with hepatitis C, with primary symptoms of fatigue, weakness and increased headaches, and stated that the prognosis was poor. (AR 104). He rated Plaintiff's fatigue as a nine out of ten, and rated Plaintiff's neck and spine pain as a nine out of ten. (Id.). He opined that Plaintiff (1) can sit, stand or walk for no more than two hours in an eight hour day, (AR 105); (2) does not require a cane for occasional standing or walking, (id.); (3) can "Never" lift and carry any weight, (AR 105); (4) has significant limitations in repetitive reaching, handling, fingering or lifting, (id.); and (5) must avoid stooping, pushing, kneeling, pulling and bending, (AR 106). Dr. Goldstein also indicated that Plaintiff's condition interferes with his ability to keep his neck in a constant position, and Plaintiff cannot "do a full-time competitive job that requires that activity on a sustained basis." (AR 106). He further opined that Plaintiff cannot handle even low stress due to his sickliness, fatigue and poor concentration. (Id.).

The ALJ gave no weight to Dr. Glass's and Dr. Goldstein's opinions that Plaintiff cannot work, as this is an issue reserved for the Commissioner, but otherwise gave their opinions "little weight."

8

(AR 451-52).    One prominent reason for this assessment is that the doctors' opinions were "not consistent with the longitudinal record, including the activities of [Plaintiff] that included kayaking or at least assisting his daughter or daughters in kayaking by lifting a kayak full of water."  (AR 452).    The ALJ's reference to "lifting a kayak full of water" appears to come from a treatment note dated October 31, 2011, which states, as part of Plaintiff's medical history, that Plaintiff "had a popped [sic] in his back in lifting a kayak full of water recently."  (AR 258).    The ALJ referenced this note elsewhere in the decision, remarking that "[t]his activity is inconsistent with the level of limitation being claimed by [Plaintiff] at that time."  (AR 453).

Plaintiff contends that the ALJ "failed to develop the record regarding the frequency and occurrence of activities involved in kayaking."  (Joint Stip. 11-12).    However, further information was unnecessary.  The mere fact that Plaintiff was lifting a kayak full of water around October 2011 – after his pain had allegedly become so unbearable that he "just literally . . . couldn't work anymore," (AR 498) – conflicts with the opinions of Dr. Glass and Dr. Goldstein. Dr. Glass opined that Plaintiff can lift only "[l]ess than 10 pounds" and cannot balance, stoop, kneel or crouch.  (AR 234).    Dr. Goldstein indicated that Plaintiff can never lift or carry any weight and must avoid stooping, pushing, kneeling, pulling and bending.  (AR 105, 106).    Their opinions portray a person whose debilitating condition would not permit even attempting to lift a kayak full of water or

being involved in the kind of situation in which such an activity might arise.

Dr. Glass's and Dr. Goldstein's assessments of Plaintiff's functional limitations conflict with other evidence in the record as well, including Plaintiff's own statements. Plaintiff testified that he "probably [cannot] lift more than about 10 or 15 pounds." (AR 487). On a form Plaintiff completed for Dr. Regan on October 27, 2011, Plaintiff checked a box to indicate that "[p]ain prevents [him] from lifting heavy weights but [he] can manage." (AR 410).

The ALJ also discounted Dr. Glass's opinion because the doctor "reported a torn right ACL, but there is no MRI or other proof of such a condition." (AR 452). As noted above, Dr. Glass cited Plaintiff's "torn ACL [and] meniscus" as the basis for his opinion that Plaintiff requires a cane for standing or walking. (AR 232). Plaintiff contends that the ALJ was impermissibly "cherry-picking" by singling out this one reference to a "torn ACL" to discount Dr. Glass's opinion. (Joint Stip. at 8). Plaintiff argues that the right knee MRI shows other injuries, including a torn meniscus, that "substantiates and supports Dr. Glass's opinion requiring a cane to ambulate." (Id. (citing AR 227)). Plaintiff also suggests that the ALJ may have been referring to a "torn ACL relating to the surgery performed years ago." (Id.). Although there may be various possible explanations for why Dr. Glass noted a torn ACL despite an absence of supporting evidence, the ALJ reasonably found that the notation was

10

contradicted by objective medical evidence (the MRI) and properly considered this as a basis to accord less weight to the opinion.

Other evidence in the record also undermines Dr. Glass's opinion that Plaintiff required a cane. Plaintiff did not have a cane at the hearing before the ALJ. He stated that he left his cane in the car. (AR 490). When asked why he did not bring it in, he said, "I don't have an answer." (AR 502). Pressed to explain, he stated that he "knew it was right up the elevator and out the door." (AR 502). Plaintiff did not have a cane when Dr. Ruben Ustaris, M.D. examined him on August 30, 2011. (AR 246). Moreover, in contrast to Dr. Glass, Dr. Goldstein opined that Plaintiff does not require a cane for occasional standing or walking. (AR 105).

The ALJ discounted Dr. Goldstein's opinion partly because he "did not support his opinion with medical reasoning based on objective findings and subjective complaints consistent with the findings." (AR 452). Dr. Goldstein's medical source statement contains very minimal notations. (AR 104-08). The only other documents that Dr. Goldstein apparently provided are a few very brief, fragmented and largely illegible treatment notes and some laboratory blood test data. (AR 236-43). The opinion's lack of supporting reasoning and evidence was a legitimate basis to discount it. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ also found that the severity of Dr. Goldstein's opined limitations conflicted with Plaintiff's conservative pain treatment. The ALJ remarked that if Plaintiff had actually been experiencing "the level of pain and difficulty described by Dr. Goldstein, it seems unlikely that he would postpone surgery for years, and cease taking all pain medication." (AR 451). Plaintiff's decisions to stop taking pain medications since as early as October 2011, (see AR 410 (questionnaire dated October 27, 2011), and to postpone surgery for years reasonably suggest that his pain was not a nine out of ten in severity, as Dr. Goldstein opined. (AR 104).

The ALJ also noted, apparently with respect to Dr. Goldstein's opinion and the limitations related to hepatitis C, that Plaintiff "did have some treatment [for hepatitis C], and the condition went into remission according to [Plaintiff]." (AR 452). This is another legitimate reason to discount Dr. Goldstein's opinion. Contrary to the serious limitations that Dr. Goldstein described and apparently attributed to hepatitis C, Plaintiff's hearing testimony suggests that his hepatitis C was not debilitating. At the hearing on April 3, 2013 (before ALJ Burlison), Plaintiff testified that he was taking medication only for diabetes, not hepatitis C, and the only effect that he noted about his hepatitis is that it "seems to aggravate the diabetes." (AR 41, 46). At the hearing on July 12, 2016, Plaintiff indicated (through his counsel) that his hepatitis C condition was in remission. (AR 481).

12

While giving "little weight" to the opinions of Dr. Glass and Dr. Goldstein, the ALJ gave "greater weight" to the opinions of consultative examiner Dr. Ruben Ustaris, M.D., and the state agency medical advisors because he found them to be "far more consistent with the longitudinal record." (AR 452).

Dr. Ustaris examined Plaintiff on August 30, 2011. (AR 244-48). He noted that Plaintiff drove himself to the exam. (AR 245). He described Plaintiff as "alert, oriented, and not in acute distress," though appearing "weak and fatigued." (AR 246). Plaintiff was "walking independently, and [did] not require the use of assistive device for ambulation." (AR 246). Dr. Ustaris observed, upon examination, that Plaintiff had (1) "[n]o myalgias, arthralgias, joint swelling or crepitus," (AR 245); (2) "[n]o weakness, numbness, syncope or light-headedness," (id.); (3) "[n]o headaches or difficulty with coordination," (id.); (4) "no palpable tenderness" in the back, (AR 246); (5) grossly normal range of motion in shoulders, elbows, wrists, hips, knees and ankles, although there was "pain on full extension" in his left knee, (AR 247); (6) "[n]ormal muscle bulk and tone without atrophy," with full strength "throughout without focal motor deficits," (id.); and (7) intact sensation throughout, (id.). He found that Plaintiff could (1) "generate 40 pounds of force using the right hand, and 35 pounds of force using the left hand," (AR 245); (2) "lift and carry 50 pounds occasionally and 25 pounds frequently," (AR 248); (3) "push and pull on a frequent basis,"; (4) "walk and stand six hours out of an eight-hour workday with normal breaks," (id.); (5) "sit six hours out of an eight-hour

13

workday with normal breaks," (id.); and (6) "climb, balance, kneel and crawl occasionally," (id.).

Both the state agency non-examining consultants, Dr. Pan and Dr. Chiang, reviewed the record and concluded that Plaintiff was capable of light work. (AR 60-64). The ALJ found these opinions to be especially consistent with the evidence, and thus appropriately adopted the more restrictive limitation in the RFC. (AR 449, 452); see Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

The Court finds that the ALJ properly rejected Dr. Glass's and Dr. Goldstein's opinions by articulating specific and legitimate reasons that are supported by substantial evidence in the record.

**B.    The ALJ Did Not Err in Finding that Plaintiff's Impairments or Combination of Impairments Did Not Meet or Equal Listing 1.04A**

If a claimant suffers a severe impairment, the ALJ is required to decide whether the impairment meets or equals one of the listed impairments. See 20 C.F.R. § 404.1520(c), (d); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Disability is presumed if a claimant's impairment or combination of impairments meets or is medically equivalent to one of the listed impairments. Id. at 175; 20 C.F.R. § 404.1520(d); Bowen v. Yuckert, 482 U.S. 137, 141-42

14

(1987); <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001); <u>Barker v.</u> <u>Secretary of Health & Human Servs.</u>, 882 F.2d 1474, 1477 (9th Cir. 1989). An impairment meets a listed impairment if a claimant has "a medically determinable impairment(s) that satisfies all of the criteria of the listing." 20 C.F.R. § 404.1525(d); <u>see also</u> <u>Sullivan</u> <u>v. Zebley</u>, 493 U.S. 521, 531 (1990). The criteria of a listed impairment cannot be met solely based on a diagnosis. 20 C.F.R. § 404.1525(d); <u>see also</u> <u>Key v. Heckler</u>, 754 F.2d 1545, 1549-50 (9th Cir. 1985). An impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a); <u>Young v. Sullivan</u>, 911 F.2d 180, 181 (9th Cir. 1990). If an impairment is not described in the listed impairments, or if the combination of impairments does not meet one of the listed impairments, the determination of medical equivalence is based on a comparison of findings (concerning a claimant) "with those for closely analogous listed impairments." 20 C.F.R. § 404.1526(b)(2), (3). The decision is based on "all evidence in [a claimant's] record about [his or her] impairment(s) and its effect on [a claimant] that is relevant to this finding" and on designated medical or psychological consultants. 20 C.F.R. § 404.1526(c).

The ALJ stated that he "considered Listings 1.02 and 1.04" and concluded that "[t]he evidence does not support a finding of the criteria required to meet a listing." (AR 449). Neither of the state agency reviewing physicians, Dr. Pan and Dr. Chiang, found that Plaintiff met any of the Listings. (AR 62, 73).

15

Plaintiff claims that he met all the criteria for Listing 1.04A. (Joint Stip. at 24-26). Listing 1.04 requires "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthristis, verterbral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 1.04. Further, Listing 1.04A specifically requires: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Id.

According to Plaintiff, the record establishes that he suffers from "motor loss and weakness," as well as "sensory or reflex loss," among the other criteria in Listing 1.04A. (Id. at 2-3). However, Dr. Ustaris found upon examination on August 30, 2011 that Plaintiff has full motor strength and intact sensation. (AR 247). On April 1, 2014, orthopedic physician Leonel A. Hunt, M.D., examined Plaintiff and observed "no gross motor or sensory deficits." (AR 660).

Plaintiff also claims he had a positive straight leg raising test, as required to meet Listing 1.04A based on lower back impairment. (Joint Stip. at 26). However, the ALJ reasonably discounted the positive test due to an inconsistency in the record

suggesting that the positive test was not objectively valid.   (AR
452).   The ALJ stated:

> The straight-leg raising test requires a subjective input
> from [Plaintiff], and in this August 30, 2011 examination
> [by consultative examiner Dr. Ustaris], [Plaintiff] claimed
> pain during the test.   Two months later, on October 31,
> 2011, [Plaintiff] did not complain of pain on straight-leg
> raising test when examined by Dr. John Regan....

(AR 453; see AR 246 (Dr. Ustaris examination); AR 258 (Dr. Regan's
examination)).

Plaintiff has failed to set forth sufficient evidence showing
that his impairments met or equaled Listing 1.04.   To the contrary,
substantial evidence in the record supports the ALJ's finding that
Plaintiff did not meet this Listing.

## C.   The ALJ Did Not Err in Evaluating Plaintiff's Credibility

An ALJ's assessment of a claimant's credibility is entitled to
"great weight."   See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th
Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).
"[T]he ALJ is not required to believe every allegation of disabling
pain, or else disability benefits would be available for the asking,
a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."   Molina v.
Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).   To determine whether a

17

claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Id. at 1284. Absent affirmative evidence of malingering, however, the ALJ may reject a plaintiff's testimony only "by offering specific, clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider the following:

(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek

18

treatment or to follow a prescribed course of treatment;
and (3) the claimant's daily activities.

Id. An ALJ may also consider "the claimant's work record and
observations of treating and examining physicians and other third
parties." Id.

The ALJ's findings supporting the credibility determination must
be "sufficiently specific to permit the court to conclude that the
ALJ did not arbitrarily discredit claimant's testimony." Thomas v.
Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (citing Bunnell v.
Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). "If the ALJ's
credibility finding is supported by substantial evidence in the
record, we may not engage in second-guessing." Id. at 959; see also
Lasich v. Astrue, 252 F. App'x 823, 825 (9th Cir. 2007) (court will
defer to ALJ's credibility determination when the proper process is
used and proper reasons for the decision are provided).

Here, the ALJ examined the Administrative Record, heard
testimony from Plaintiff, and determined that Plaintiff had produced
objective medical evidence of underlying impairments that "could
reasonably be expected to cause some of the alleged symptoms." (AR
454). However, the ALJ concluded that Plaintiff's "statements
concerning the intensity, persistence and limiting effects of these
symptoms are not entirely consistent with the medical evidence and
other evidence in the record for the reasons explained in th[e]
decision." (Id.).

After consideration of the record as a whole, the Court finds that the ALJ provided specific, clear and convincing reasons for deeming Plaintiff's testimony about the limiting effects of his symptoms less than fully credible. This included the ALJ's observation that Plaintiff provided contradictory or exaggerated statements, suggesting that he was less than candid. Plaintiff testified, for example, that he had "worked every day for 30 years[, f]our days a week, 10 hours a day," (AR 499), but the ALJ found that this was exaggerated. (AR 450). The ALJ explained:

Going back thirty years before he last worked in 2011, we begin with 1981 (See Exhibit 70). He had no earnings that year, less than $900 in 1982, and he apparently began working as an employee of others in late 1982, and during the following four years earned in the range of $20,000 and a little less. He then had no earnings in 1987 and 1988. Apparently, he then started his self-employment in 1989. He had low earnings in 1989 and 1990. He was capable of making significant earnings, as he earned over $49,000 in 1991 and over $34,000 in 1992.

He did not work at all in 1993, and earned less than $11,000 in 1994. In 1995, he had his best year, earning $61,200. During the next five years, he earned an average of just over $1,000 a year; he had zero earnings in three of the years, and very little in the other two years. In 2001, he had his last year of significant earnings,

$49,526. He had low earnings during the next eight years, 2002 through 2009, and no earnings in 2010. In 2011, he earned a little over $2,000 and has not worked since. The record supports his testimony that when he does not have to work, he does not work, as his wife is a fully employed attorney (Exhibit 7D).

(AR 451).

It is therefore clear that Plaintiff blatantly exaggerated his work history, claiming he had "worked every day for 30 years[, f]our days a week, 10 hours a day," (AR 499), when in fact there were years when he worked very little or not at all. (See AR 499 (Plaintiff stating at the hearing, "You know, my wife worked and so, many times if I didn't have the work, I just wouldn't work.")) This is a reasonable ground for discrediting Plaintiff's allegations. Moreover, as the ALJ suggested, Plaintiff's fluctuating work history demonstrates a lack of motivation to work. (AR 450). The ALJ properly found this "a serious issue" to consider in weighing Plaintiff's claims. See Thomas, 278 F.3d at 959 (affirming the ALJ's credibility finding that rested in part on the claimant's spotty work history that showed she had "little propensity to work in her lifetime").

The ALJ also found inconsistencies in Plaintiff's statements about his alleged poor concentration. The ALJ noted that at the hearing Plaintiff attributed his poor concentration to pain, which

21

caused headaches.  (AR 450; see AR 484 (hearing)).  However, the ALJ noted that this was inconsistent with an earlier statement of Plaintiff's: "[O]n September 28, 2011, [Plaintiff] said the reason he had difficulty concentrating was the side effects of red interferon he was then taking for his hepatitis condition; he did not mention headaches or neck pain."  (AR 450 (citing Exhibit 1A, p. 4); see AR 59).  The ALJ also noted that Plaintiff "was able to stay alert and respond appropriately throughout" the forty-minute hearing.  (Id.).

The ALJ's summary of Plaintiff's testimony highlights additional contradictions.  This includes Plaintiff's statements about past drug use:

> Years ago, he had experience with addiction.  Asked his drug of choice, he said it was marijuana in the 1960s. (He told Fred Poordad, M.D., he had a twenty-five year history of intravenous drug use (Exhibit 8F, p. 41)).

(AR 449; see AR 522 (2013 hearing); AR 493 (2016 hearing); AR 308 (Dr. Poordad's report).[6]  It also includes testimony about Plaintiff's traveling since his alleged onset date:

---

[6] In 2013, Plaintiff testified that he had a drug problem thirty-three years ago, "back in the sixties," and his drug of choice was marijuana.  (AR 522).  In 2016, he testified that he had no history of alcohol or substance abuse.  (AR 493).  On August 1, 2006, Dr. Poordad completed an outpatient consultation regarding Plaintiff's hepatitis C, noting that Plaintiff acquired hepatitis C "through IV drug abuse in the 1970's," but "since then, has been abstinent of both IV drug use as well as alcohol."  (AR 308).

He has done no traveling since March 31, 2011. He went to
his older daughter's school when she graduated. He had a
friend drive his motor home to Santa Cruz. Since March
2011, he took his motor home to a camping site in Ventura
for a weekend.

(AR 449; see AR 490-91, 494-95 (hearing)).[7] The ALJ's account of the
testimony additionally highlights a contradiction regarding
Plaintiff's alleged inability to operate foot controls:

He is not able to push or pull with his legs. He is not
able to operate foot controls. He drives an automobile.

(AR 450; see AR 489, 492 (hearing)). Such contradictions underscore
the questionable veracity of Plaintiff's subjective complaints.

The ALJ also reasonably determined that the objective evidence
did not support the extent of Plaintiff's alleged limitations.
(Id.). While such evidence cannot be the "sole ground" for rejecting
subjective pain testimony, it "is still a relevant factor in

[7] The ALJ specifically asked Plaintiff if he has "done any
traveling to visit [his daughter] in college or go to the college at
all since the alleged onset date." (AR 490). The ALJ then asked if
he has "gone anywhere within the state of California, outside the
state of California, [or] outside the country, since March 31, 2011."
(AR 491). Plaintiff simply answered no to both questions. Later in
the hearing, however, Plaintiff revealed that he "recent[ly]" took
his motor home to Santa Cruz for his daughter's graduation (with a
friend driving) and also "to Thornbroom camping site on the beach in
Ventura." (AR 494-95). When asked about this inconsistency,
Plaintiff explained that he "just had forgotten." (AR 504).

determining the severity of the claimant's pain and its disabling effects." <u>Rollins v. Massanari</u>, 261 F.3d 853, 856, 857 (9th Cir. 2001); <u>see also</u> <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 883 (9th Cir. 2006) (ALJ may cite the medical record in concert with other factors in assessing a claimant's credibility). Here, in particular, Dr. Ustaris's examination findings conflicted with Plaintiff's complaints. (See AR 244-48). Dr. Ustaris found, for example, that Plaintiff could "generate 40 pounds of force using the right hand, and 35 pounds of force using the left hand." (AR 245). He described Plaintiff as "alert, oriented, and not in acute distress." (AR 246). Dr. Ustaris found Plaintiff could "lift and carry 50 pounds occasionally and 25 pounds frequently"; "push and pull on a frequent basis"; "walk and stand six hours out of an eight-hour workday with normal breaks"; "sit six hours out of an eight-hour workday with normal breaks"; and "climb, balance, kneel and crawl occasionally." (AR 248).

Furthermore, the ALJ reasonably discounted Plaintiff's credibility because the alleged severity of his pain conflicted with his conservative pain treatment, including his decisions to stop taking pain medications and postpone neck surgery for years. (AR 451). This is an appropriate basis on which to discredit Plaintiff's complaints. <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may discount a claimant's credibility based on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); Social Security Ruling 16-3p, 2016 WL 1119029, *9 (March 16, 2016) ("[I]f the frequency or

24

extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). Plaintiff testified that he is in "constant pain," (AR 483), which he rated as a six or seven out of ten, (AR 484), and stated that the pain makes it difficult to sleep or concentrate and is why he had to quit working in April 2011. (AR 484, 496, 498). Despite the alleged debilitating pain, Plaintiff has stated that he stopped taking pain medication in 2011 and takes only Aleve, an over-the-counter drug, for the pain. (AR 410, 482).

Plaintiff contends that the ALJ failed to account for the reasons why Plaintiff avoided pain medication and postponed surgery. (Joint Stip. at 34). Plaintiff has offered different explanations for these decisions. In a questionnaire dated October 27, 2011, he indicated that he stopped taking pain medications because they gave him "very little relief from pain." (AR 410). At the hearing on July 12, 2016, Plaintiff stated that the decision was because he does not want to "put anything in [his] liver," though he acknowledged that his doctor never specifically directed him to avoid the medication. (AR 482, 499). Plaintiff also stated that he did not like the fact that the medications made him feel "incoherent and loopy," and he was "unable to do hardly anything" when on them.[8] (AR

---

[8] Similarly, at the earlier hearing before ALJ Burlison on April 3, 2013, Plaintiff stated that he cannot take pain medication

500).  As for the surgery, Plaintiff stated at the hearing that he waited until July 2014 to undergo surgery on his neck – in which two titanium discs were inserted and a bone spur was "ground off" – because the procedure was "very expensive," and a "dear friend" who is a neurosurgeon at UCLA advised him to wait until the available technology for the procedure improved.  (AR 500-01).

Even taking these explanations into account, the ALJ reasonably determined that Plaintiff's conservative pain management decisions undermined his allegations of constant, debilitating pain.  Notably, Plaintiff did not point to any treating physician's recommendation to explain his decisions.  Moreover, though he said the surgery was "expensive" and he would have to "pay 20 percent of it," (AR 500-01), he did not claim that he was unable to afford it.

The ALJ also reasonably determined that Plaintiff's activities of daily living did not support his allegations of total disability.  (AR 450, 453).  An ALJ may rely on a claimant's activities of daily living to show not only that Plaintiff can perform work in accordance with the RFC determination, but also to undermine Plaintiff's credibility when such activities are inconsistent with Plaintiff's subjective allegations of disability.  See Molina, 674 F.3d at 1112–13; Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009).  Here,

because he "tr[ies] to keep [his] liver as good as [he] possibly can."  (AR 48).  He further stated, "[Pain medication] just makes me completely – I'm sensitive to it, and I don't like it.  It turns me into incoherent [sic].  So I just don't take it."  (Id.).

26

for example, the ALJ reasonably found that Plaintiff's daily reading activity undermined his claim of poor concentration. (AR 450). Plaintiff testified that in a typical eight-hour day, he can focus or think clearly for only about four hours, or half the time. (AR 485). However, as the ALJ noted, Plaintiff also stated that he "loves to read" and "reads four or five hours a day, such as neuroscience and Carl Jung, and he does research on the internet." (AR 450; see AR 491-92 (hearing)).

Plaintiff argues that his reading four or five hours a day is consistent with his allegation that he can focus for about half of an eight-hour workday. (Joint Stip. at 33-34). However, Plaintiff's reading choices demand a heightened lucidity. His daily habit of reading hours of dense texts for pleasure belies his claim of a serious concentration deficit, and reasonably suggests an ability to focus for more than half a workday. Moreover, to the extent that Plaintiff claims pain is the cause of his concentration deficit, the pain is clearly not so constant or overwhelming that it poses a serious distraction.

In addition, the ALJ found Plaintiff's alleged physical limitations inconsistent with his activities that apparently included "lifting a kayak full of water." (AR 258, 453). As noted above with respect to the first issue, a treatment note signed by Dr. Regan on October 31, 2011 states that Plaintiff "had a popped [sic] in his back in lifting a kayak full of water recently." (AR 258). The ALJ

reasonably found that "[t]his activity is inconsistent with the level of limitation being claimed by the claimant at that time." (AR 453).

Accordingly, the ALJ's findings are "sufficiently specific" for the Court to conclude that "the ALJ did not arbitrarily discredit [Plaintiff's] testimony." See Thomas, 278 F.3d at 958. As the ALJ's credibility finding is supported by substantial evidence in the record, the Court "may not engage in second guessing." Id. at 959.

## VI. ORDER

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 8, 2018

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE
